U.S. DISTRICT COURT – N.D. OF N.Y.
FILED
Dec 12 - 2023
John M. Domurad, Clerk

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>(1) One black Motorola Cellphone, (2) One black Samsung Cellphone, and (3) One blue Motorola Cellphone, all currently located at 4525 US Highway 11, Malone, New York 12953 | )<br>)<br>)  Case No. 8:23-MJ- 736   (GLF)<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the Northern District of New York, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | -Transporting Aliens |
| 8 USC 1325 | -Improper Entry |
| 8 USC 1326 | -Reentry of Removed Aliens |

The application is based on these facts:
See attached affidavit

☒ Continued on the attached sheet.
☒ Delayed notice of 30 days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

12/12/2023
11:20 AM
*Applicant's signature*

Border Patrol Agent Dylan J. Thomas
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ *(specify reliable electronic means)*.

Date: December 12, 2023

City and state: Plattsburgh, NY

*Judge's signature*

Hon. Gary L. Favro
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br>(1) One black Motorola Cellphone, (2) One black Samsung Cellphone, and (3) One blue Motorola Cellphone, all currently located at 4525 US Highway 11, Malone, New York 12953. | Case No.   8:23-MJ-736 (GLF) |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Dylan J. Thomas, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of (1) One black Motorola Cellphone, (2) One black Samsung Cellphone, and (3) One blue Motorola Cellphone (hereinafter "the Devices") which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Border Patrol Agent (BPA) with the United States Department of Homeland Security (DHS), Bureau of Customs and Border Protection (CBP), United States Border Patrol (USBP), assigned to the Burke Border Patrol Station. I have been a Border Patrol Agent since August 2017. My primary duty is to assist in the prevention of illicit trafficking of people and contraband between the official ports of entry. My authority to perform this mission is articulated in the Immigration and Nationality Act, sections 235 and 287, and Title 8 U.S.C. Section 1357. These bodies of law relate to, among other things, a

Border Patrol Agents authority to interrogate any alien or person believed to be an alien, and to make an arrest of any alien who is entering or attempting to enter the United States in violation of the immigration laws. To enforce these laws, I have received training at the Federal Law Enforcement Training Center in Artesia, New Mexico in Law, Operations, Firearms, Driving Techniques, and Physical Techniques.

3. I have investigated violations of the Immigration Nationality Act (INA) including illegal entry of aliens in violation of Title 8, United States Code, Section 1325, and the smuggling of aliens in violation of Title 8, United States Code, Section 1324. I have written and executed search warrants for electronic devices and have reviewed the evidence contained within. I have analyzed data and information from electronic devices and presented that data as evidence during criminal investigations.

4. The applied-for warrant would authorize the forensic examination of the Devices, as described in Attachment A, for the purpose of identifying electronically stored data described in Attachment B. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of Title 8, United States Code, Section 1324 have been committed by Jonnathan GUAZHIMA-Belesaca. There is also probable cause to search the property described in Attachment A, for evidence of these crimes as described in Attachment B.

5. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge of this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.  The property to be searched is: (1) One black Motorola Cellphone [IMEI-359100105876960, Evidence bag #A8907751] (Device 1), (2) One black Samsung Cellphone [IMEI-358997691153519, Evidence bag #A8907749] (Device 2), and (3) One blue Motorola Cellphone [Evidence bag #A8907750] (Device 3), all currently located at 4525 US Highway 11, Malone, New York 12953.

7.  The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8.  On December 7, 2023, at approximately 2:00 a.m., Burke Border Patrol Agents (BPAs) were advised by Swanton Sector Radio Dispatch (KAD640) of a Buckeye camera activation, showing multiple subjects making an illegal entry into the United States near Chateaugay, NY. BPAs responded to the to the area at approximately 2:15 a.m. but were initially unable to locate the subjects. At approximately 6:45 a.m., KAD640 reported another Buckeye image, of what appeared to be the same subjects walking near McCormick Road in Chateaugay, NY. McCormick Road is a rural, east-west traveling road that parallels and is less than two miles from the International Boundary with Canada. BPAs responded and conducted surveillance in the area. At approximately 7:45 a.m., BPAs observed a white Ford Bronco pull over to the side of McCormick Road, and saw subjects exit a brushy area and begin approaching the Bronco before running back to the brushy area. The Bronco then departed the area. BPAs followed the Bronco, and could see that there was a driver, front-

3

seat passenger, and at least one subject in the rear seats. Due to the Buckeye camera activations and the observations made on McCormick Road, BPAs conducted a traffic stop on US Highway 11, near Dunkin Donuts in Chateaugay, NY.

9. BPAs approached the vehicle, identified themselves as Border Patrol Agents, and questioned a driver, front-seat passenger and one rear-seat passenger as to their citizenship and immigration status. The driver, identified as defendant Jonnathan GUAZHIMA-Belesaca, claimed to be an Ecuadoran Citizen with no lawful immigration status in the U.S. The front seat passenger, identified as MPT, claimed to be an Ecuadoran citizen with no lawful immigration status in the U.S. The rear-seat passenger, identified as Albergato VALDIVIA-Neva, claimed to be a Mexican Citizen with no lawful immigration status in the U.S. At that time, those three subjects were arrested and transported to the Burke Station for further records checks, processing, and interviews.

10. Other BPAs responded to the area where the Bronco had pulled over on McCormick Road and encountered three subjects hiding in the brush. When asked their citizenship and immigration status, those three all claimed to be Mexican Citizens with no legal right to be in the U.S. One of the three subjects was identified as Jose SANDOVAL-Avila. Those three subjects were arrested and transported Burke Station for further records checks, processing, and interviews.

11. At the station, biographical information and fingerprints were entered into Department of Homeland Security databases. Record checks confirmed information previously gathered.

4

12. Further vehicle records checks revealed the 2023 Ford Bronco was bearing false plates. VIN records check on 1FMDE5DH7PLB92800 revealed that the Bronco was reported stolen. It was verified that the Bronco was stolen on September 27, 2023, from Beiner Ford car dealership in Great Neck, NY. The Bronco will be turned over to New York State Police.

13. Jose SANDOVAL-Avila was read Miranda rights and agreed to answer questions without a lawyer present. In his interview, Jose SANDOVAL-Avila stated that when he and the other two border crossers were approaching the Bronco, the driver—who BPAs discovered shortly thereafter was defendant GUAZHIMA-Belesaca—told them he would come back for them, because there were cars nearby, and then he left the area without picking up the three people in the brush.

14. Jonnathan GUAZHIMA-Belesaca is currently charged with Transporting Aliens, in violation of 8 U.S.C. §1324(a)(1)(A)(ii) Transporting Aliens. 8:23-MJ-727 (GLF).

15. Jose SANDOVAL-Avila and Albergato VALDIVIA-Neva are both charged with Illegal Re-entry into the United States, in violation of 8 U.S.C. §1326(a). 8:23-MJ-726 (GLF).

16. At the Burke Border Patrol Station, the subjects and their personal belongings were searched for weapons and other illicit contraband. During this search, three cellphones was discovered in the vehicle, on the subjects' persons, in their personal belongings, or were claimed as belonging to the following subjects as described below:

   a. Device 1 was seized from Jose SANDOVAL-Avila.

   b. Device 2 was seized from Jonnathan GUAZHIMA-Belesaca.

   c. Device 3 was seized from Albergato VALDIVIA-Neva.

5

## TECHNICAL TERMS

17. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

   b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

   c. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic films. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras

also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

d. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

e. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna

can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

f.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

18. Based on my training, experience, and research, I know that cellular phones such as Device 1, Device 2, and Device 3 have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been

8

viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is

9

evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant. The examination will be performed by representatives from the Department of Homeland Security and their designees.

22. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Attested to by the Affiant:

12/12/2023
11:20 AM

Dylan J. Thomas
Border Patrol Agent
United States Border Patrol

I, the Honorable Gary L. Favro, United States Magistrate Judge, hereby acknowledge that this affidavit was attested to by the affiant by telephone on December 12, 2023 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Hon. Gary L. Favro
United States Magistrate Judge

## ATTACHMENT A

### Property to be Searched

The properties to be searched are: (1) One black Motorola Cellphone [IMEI-359100105876960, Evidence bag #A8907751] (Device 1), (2) One black Samsung Cellphone [IMEI-358997691153519, Evidence bag #A8907749] (Device 2), and (3) One blue Motorola Cellphone [Evidence bag #A8907750] (Device 3), all currently located at 4525 US Highway 11, Malone, New York 12953. This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Particular Things to be Seized

1. All records on the Devices described in Attachment A that relate to violations of Title 8 U.S.C. §§ 1324, 1325, and 1326 and conspiracy to commit same, and involve Jonnathan GUAZHIMA-Belesaca, and other as-yet unidentified co-conspirators, including:

    a. Listings of incoming and outgoing calls with corresponding date/time of calls;

    b. Stored telephone and address directories;

    c. Direct connect and identification numbers;

    d. Pictures and videos;

    e. All audio recordings;

    f. All voice mail recordings;

    g. All location and GPS data;

    h. All instant messaging and related stored communications; and

    i. All SMS messages and related stored communications;

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

13

    a. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered any Internet search engine, and records of user-typed web addresses.

3. As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.